Ruffin, <L
 

 Although the order in the Court of Equity does not declare the grounds on which it was made, yet, in. the opinion of the Court, enough appears in the pleadings, to sustain it. Equity does not usually interfere to restrain á'trés'pass, but leaves the party to legal redress. But, both from the nature of the propertjq and the peculiarity of the situation in which the parties stand, the plaintiff is entitled to relief. The .bequest is plainly, and expressly to the separate use of the wife, with a remainder to a.ehild then born, and to such others as may come m
 
 esse.
 
 But no trustee is nominated, and, therefore, the legacy, as far, at least, as the estate of the wife is' concerned, vested
 
 jure
 
 mariti, in the husband. But, in thk Court, he stands as trustee for her, upon the clear intent, that
 
 *306
 
 lie should not take for his own benefit, but that she should enjoy, for her life, as if she were sole,
 
 Parker
 
 v. Brooke, 9 Ves. 583;
 
 Steel
 
 v.
 
 Steel,
 
 1 Ire. Eq. 452. He, then having the legal title, though on trust, could not maintain an action against •the sheriff for taking the slave as his property, nor against the purchaser from the sheriff. It is possible that obstacles may present themselves in the way of getting the full relief asked, (that of a settlement of all the negroes in trust for the plaintiff for life, and then for her children,) both from the nature of the limitation in remainder to the children, and from the fact, that the children are not parties. But wo are not to deal with that question now, nor to anticipate the effect on the injunction of amending the bill, by bringing in the children. The controversy, at present, concerns the interest of the plaintiff alone. She has, unquestionably an estate to her separate use in the negroes, and that is purely an equitable interest that can he asserted only in this Court, and will be protected in this Court, because she has either no trustee, or none that can, in the actual condition of tilings, make- the title available at htw, so as to secure her equitable interest.
 

 Thus far the jurisdiction has been considered, as if the controversy was touching the negroes specifically bequeathed ; in which case, as the separate use of the wife, is beyond all doubt, the Court holds that she would bq entitled to an injunction against the husband to restrain his alienation in breach of the trust, and to a decree securing the property to her by a proper settlement, with a fit trustee, and, therefore, that she is equally entitled to a similar relief against the creditor of the husband, endeavoring to effect a similar breach of trust, by a sale under execution, wherein the purchaser could only get (if any thing) the naked legal title of the husband, and would bold it, in the view of this Court, on the same trusts as attached to it in the hands of the husband;
 
 Freeman
 
 v. Hill, 1 Dev. and Bat. Eq. 389; Polk
 
 v. Gallant,
 
 2 Dev. and Bat. Eq. 395. This, however, is not the case of a seizure 5f one of the slaves bequeathed to the separate use of the plaintiff, but of a slave which, the hill alleges, w-as got in exchange for
 
 *307
 
 one of them by the husband, acting as the agent of the plaintiff, by an agreement between her and her husband, or purchased by him for her with the price obtained for one of the original slaves, necessarily sold for his faults, and accepted by her in his stead. It must be admitted, that on those positions, if denied by the defendants, the
 
 onus
 
 is on the plaintiff. She must show that she has the same equity attaching to the slave in controversy, which she had in the one her father gave her. That, she will not establish by merely showing that her husband sold one of hers, and afterwards bought this one; for that would not give her a specific equit}r to this slave, that could defeat the husband’s creditor by judgment and execution. She must go further, and show affirmatively, that, in. fact, she took this negro for the other, by a contract, to that effect, with her husband, or, as the bill is framed, that in truth, she made the husband, by an agreement beforehand, her agent to make the sale and purchase for her, so that this negro should take the place, as a part of her separate property, of the one sold. It results from the nature of separate property in a wife, that she and the husband may deal, in respect to it, and that he may act as her agent in making sales and purchases ; which is so well established, as to need no citation of authority to sustain it. Now, in the case before the Court, there are strong circumstances, in admitted facts, tending to establish the allegations of the bill on that head, although, as a conclusion from those facts, the answer does not admit the agency of the husband in making an exchange of negroes, nor in selling the one, or investing the proceeds in the other, but formally denies them, according to the belief of the defendants, and the alleged declarations of the husband. But the answer docs not profess to state any knowledge of the defendant on that point, and, therefore, cannot, with propriety, directly deny the conclusion. , It is the common case of the admission of the main equity of a bill and bringing forward new matter in avoidance; and on such an answer, it is the rule of the Court not to dissolve an injunction, when the object, and only effect of it, is to secure the property until the right to it can be ad
 
 *308
 
 judged on the proofs of the parties. That Jim belonged to the plaintiff; that he was taken away by the husband for sale; that he was sold upon necessity, for his faults; that the husband was from home not longer than was requisite to sell one negro and buy another at Richmond; that he brought back the girl, and that she remained in the possession of him and his wife, with the other negroes bequeathed to her from October, 1855, to August, 1858; that lie was needy and in failing circumstances, and not likely to buy and hold property on his own account, nor able to do so, all tend to sustain the right alleged in the bill, and are by no means refuted by the statement that lie took the deed to himself, or spoke of the girl as his, or offered to sell her. Eor, if he had taken the deed to his wife, the title, at law, would have been in him, and, therefore, it is not material how that fact was, nor how he said it was. The case, therefore, is a proper one for continuing the injunction to the hearing ; and so it must be certified to the Court of Equity ; and the appellant must pay the costs of this Court!
 

 Per Curiam, Order affirmed.